United States District Court
Southern District of Texas

**ENTERED**

September 18, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROY EUGENE USSERY, a/k/a | § | |
| TROY USSERY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. H-17-2235 |
| | § | |
| HPD OFFICER X.A. FLORES, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, filed this section 1983 lawsuit against Houston Police Department ("HPD") Officer X.A. Flores and Officer Nicole Miyako (f/k/a N. Tafhurt), and Harris County Deputy Everett Simpson. Simpson filed a motion for summary judgment (the "Simpson Motion") (Docket Entry No. 26), to which plaintiff filed three responses (Docket Entries No. 28, 37, 42) and Simpson filed a reply (Docket Entry No. 41). Flores and Miyako filed a motion for summary judgment (the "HPD Motion") (Docket Entries No. 33, 35), to which plaintiff filed two responses (Docket Entries No. 37, 42) and the defendants filed a reply (Docket Entry No. 38).

Having considered the motions, the responses and replies, the record, and the applicable law, the Court **GRANTS** the motions for summary judgment and **DISMISSES** this lawsuit for the reasons shown below.

## I.  BACKGROUND AND CLAIMS

Plaintiff complains that, on July 22, 2015, at a motel located in Harris County, Texas, defendants accosted, assaulted, and tazed him without justification, causing bodily injuries. He seeks monetary compensation for their use of excessive force and falsification of the incident reports.  He also complains that the arrest and ensuing criminal charges were unlawful and false and that he is entitled to additional monetary compensation.

Defendants, on the other hand, state that plaintiff was found trespassing on the motel grounds in the company of a female suspect.  Plaintiff was noted to have an ankle monitor on his right leg.  The motel was known for having high drug and prostitution activity, and plaintiff had been banned from the premises.  Plaintiff resisted the officers' efforts to arrest and handcuff him, and he was brought under control only after one of the officers tazed him. Plaintiff, who falsely identified himself to the officers, was found to be an unregistered sex offender in possession of counterfeit money.

Defendants contend they are entitled to qualified immunity and move for summary judgment dismissal of plaintiff's Fourth Amendment claims.

## II.  LEGAL STANDARDS

A.    Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment if the pleadings, discovery, disclosure materials on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is

2

entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of demonstrating the absence of genuine issue for trial. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The burden then shifts to the non-moving party to show with significant probative evidence that a genuine issue of material fact exists. *Hamilton v. Segue Software*, 232 F.3d 473, 477 (5th Cir. 2000). Facts are considered material if they might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–248 (1986). When considering the evidence, all reasonable inferences are to be resolved in favor of the non-moving party. *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001).

In opposing summary judgment, the non-movant must show more than "some metaphysical doubt as to material facts." *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation or only a scintilla of evidence will not carry this burden. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Likewise, unsupported allegations, affidavits, or deposition testimony asserting ultimate or conclusory facts and conclusions of law are not sufficient to defeat a motion for summary judgment. *Clark v. American's Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

Where the record, taken as a whole, indicates that no reasonable jury could return a verdict for the non-movant, there is no genuine issue for trial and summary judgment must be granted. *Washington v. Allstate Ins. Co.*, 901 F.2d 1281,1286 (5th Cir. 1990).

B.   Excessive Force

To establish a claim for use of excessive force under the Fourth Amendment, a plaintiff must establish that he experienced:  (1) an injury; (2) which resulted directly and only from the use of force which was clearly excessive to the need; and (3) the excessiveness of which was clearly unreasonable. *See Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).  Whether the force used is excessive or unreasonable turns on the facts and circumstances of the particular case. *See Tolan v. Cotton*, __ U.S. __, 134 S. Ct. 1861, 1865 (2014); *Graham v. Connor*, 490 U.S. 386, 396 (1989).  In *Graham*, the Supreme Court identified some of the factors which a court should consider in making the determination, such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.  The "objective reasonableness" of a particular use of force is to be determined in light of the facts and circumstances confronting the officer. *Id.*

C.   Qualified Immunity

In determining if an officer is entitled to qualified immunity, a court must engage in a two step inquiry. *Tolan*, 572 U.S. at 655–56.  First, the court must, by taking the facts in the light most favorable to the party asserting the injury, determine if the facts would establish conduct that violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201,

(2001). Next, the court must determine if the right in question was clearly established at the time of the violation. *Id.*

In assessing the reasonableness of the use of force, courts give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*; *see also Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

At summary judgment, plaintiffs bear the burden to demonstrate that the defendant official is not entitled to qualified immunity. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). The court must ask whether the law so clearly and unambiguously prohibited the officer's conduct that every reasonable official would understand that what he is doing violates the law. *Id.*; *see also Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). It is clearly established that criminal suspects have a constitutional right to be free from excessive force during an arrest. *Tarver v. City of Edna*, 410 F.3d 745, 753–54 (5th

5

Cir. 2005).  This does not end the inquiry, however, as the Supreme Court has carefully admonished that courts are "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted); *see also Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015). To defeat qualified immunity, a plaintiff must demonstrate that "it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Id.* (emphasis added).

### III.  SIMPSON MOTION

Plaintiff claims that Deputy Simpson kicked him during the incident.  Simpson filed a motion for summary judgment (the "Simpson Motion") (Docket Entry No. 26), to which plaintiff filed three responses (Docket Entries No. 28, 37, 42) and Simpson filed a reply (Docket Entry No. 41).

Simpson submitted an affidavit in support of summary judgment, in which he testifies as follows:

> I am licensed as a peace officer by the State of Texas, and employed by the Harris County Sheriff's Office as a deputy sheriff. On July 22, 2015, I was working an extra job which had been previously approved by the Harris County Sheriff's Office ("the Sheriff's Office"). The extra job was located at Motel 6, Houston Energy Corridor, 14833 Katy Freeway, Houston, Texas 77094 ("Motel 6"). Motel 6 is known for having high drug activity and

prostitution. I was wearing a regulation Sheriff's Office uniform while working the extra job at Motel 6.

I was performing foot rounds on the south side of Motel 6 at approximately 2:45 a.m. on July 22, 2015, when I observed two officers from the Houston Police Department ("HPD") on the property. The HPD officers were checking an unknown Caucasian male for warrants. There was also a female suspect present. I walked up to assist in the investigation. During the investigation, I learned that Plaintiff Roy Ussery ("Plaintiff") the Caucasian male suspect, was not supposed to be on the property and was trespassing, which is a criminal offense.

I observed HPD Officer Flores attempting to handcuff Plaintiff to take him into custody on a trespassing charge. HPD Officer Flores placed one handcuff on Plaintiff's wrist. Plaintiff began to actively resist by fighting with us. He was swinging his arms, shouting and physically, forcefully and aggressively pushing us away from himself with both hands. Officer Flores held onto Plaintiff's left arm and I held onto his right arm. Plaintiff kept pushing down with his weight, trying to throw Officer Flores and me off balance.

While this was occurring, the other HPD officer was speaking to the female suspect. When she observed the struggle between Officer Flores, myself and Plaintiff, the other HPD officer came to assist us, attempting to deploy the Taser in response to Plaintiff's resistance. Plaintiff made several attempts to kick the Taser out of the second officer's hands. The HPD officer was able to deploy the Taser, but it initially did not make effective contact. The HPD officer deployed the Taser a second time to gain control of Plaintiff and successfully handcuff him. This time, the deployment was successful. Once under control, Plaintiff was then taken into custody.

The Houston Fire Department arrived on the scene to provide medical treatment for any possible injuries. The Harris County District Attorney's Office subsequently accepted a charge against Plaintiff.

The only force I used during this incident was that necessary to respond to Plaintiff's aggressive physical resistance to being taken into custody on a trespassing charge. The sole force I used was that of holding Plaintiff's arm so he could be handcuffed. At no time did I assault Plaintiff, either before he was subdued, or after he was subdued. I did not deploy my Taser at any time. I did not kick Plaintiff and I did not step on his face.

The force I used to restrain Plaintiff during the course of his arrest on July 22, 2015 was reasonable.  At all times, I was in the scope of my employment as a peace officer.  I was performing a discretionary duty, and acted at all times in good faith.

(Docket Entry No. 26-1.)

Plaintiff filed three responses to Simpson's motion for summary judgment; of the three, only the first (Docket Entry No. 28) was timely filed.  The later two responses (Docket Entries No. 37, 42) were filed without leave of court in excess of thirty days after Simpson filed his motion.  These two responses, to the extent they relate to Simpson's motion, will not be considered by the Court.

In his timely-filed response to Simpson's motion, plaintiff concedes that he "continued to struggle" against the defendants during the incident, and that he kicked and moved around trying to dodge the Taser firings.  (Docket Entry No. 28, p. 7.)  Nowhere does he claim to have surrendered to the officers prior to the Taser deployments.  Consequently, he acknowledges that he did not submit to an arrest or handcuffs and resisted defendants' efforts to bring him under control.  He further admits that he is only *assuming* that Simpson was the officer who discharged the Taser.  *Id.*, p. 8.  He presents no probative summary judgment evidence that Simpson used the Taser against him, and he fails to controvert Simpson's affidavit testimony that it was Miyako who fired the Taser, as well as Miyako's own affidavit testimony that she fired the Taser.

Moreover, plaintiff presents no probative summary judgment evidence that Simpson kicked him or stomped on his head after he was subdued, and he fails to controvert

8

Simpson's affidavit testimony that he never kicked or stomped on plaintiff's head.  He further fails to present probative summary judgment evidence, such as medical records, establishing that Simpson's actions during the incident caused him any injury.

Plaintiff presents no probative summary judgment evidence that Simpson used excessive force against him during the incident, and he fails to raise a genuine issue of material fact precluding summary judgment in Simpson's favor.  Simpson is entitled to summary judgment as a matter of law.  Simpson's motion for summary judgment (Docket Entry No. 26) is **GRANTED** and plaintiff's excessive force claims against him are **DISMISSED WITH PREJUDICE.**

To the extent plaintiff claims that Simpson violated his constitutional rights by falsifying the incident reports or failing to file a separate report, his claim raises no viable issue of a constitutional dimension for purposes of section 1983.  Simpson's motion for summary judgment dismissal of this claim is **GRANTED** and the claim is **DISMISSED WITH PREJUDICE.**

To the extent plaintiff seeks monetary compensation for an allegedly unlawful arrest and criminal charges stemming from the incident, he fails to show that the arrest and/or ensuing criminal charges have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.  His claims are barred by

9

*Heck v. Humphrey*, 512 U.S. 477 (1994), and are **DISMISSED WITH PREJUDICE** to being asserted again until the *Heck* conditions are satisfied.

## IV.  HPD MOTION

Officers Flores and Miyako filed a motion for summary judgment (the "HPD Motion") (Docket Entries No. 33, 35), to which plaintiff filed two responses (Docket Entries No. 37, 42) and the defendants filed a reply (Docket Entry No. 38).

Plaintiff alleges that these defendants used excessive force against him by tazing him, leaving scars where the Taser barbs struck him. Defendants contend that the use of force was reasonable and necessary, and that they are entitled to qualified immunity.

Flores submitted an affidavit in support of summary judgment, in which he testifies as follows:

> On July 22, 2015 at 2:49 a.m., while on patrol with Officer Nicole Miyako, we observed a suspicious vehicle parked illegally in the parking lot of Motel 6, located at 14833 Katy Freeway, Houston, Texas.  That area is known for having high drug activity and prostitution.  Officer Miyako and I were wearing Houston Police uniforms.
>
> We located the suspicious vehicle which had a female occupant, later determined to be Cassie Ledbetter Hall.  She stated that she was waiting in the vehicle for her friend.  Shortly thereafter Plaintiff approached us.  Deputy Everett Simpson, who works an approved extra job there approached and assisted in the investigation.  Simpson checked with the front desk and advised that Plaintiff was not registered as a guest and was trespassing.  We advised him he was under arrest.  Deputy Simpson and I then attempted to handcuff Plaintiff.  I placed a metal cuff on Plaintiff's left wrist, but Plaintiff refused our commands to comply and resisted by swinging his right arm in a striking manner at me and shouting and kicking.  Simpson and I are about five feet, nine inches tall.  As Simpson and I struggled with Plaintiff who was six feet tall and over 200 pounds, Miyako drew her Taser and warned Plaintiff to stop

resisting.   Plaintiff refused our commands to stop resisting and Miyako deployed the Taser which did not make good contact and had no effect. Plaintiff continued to resist, and Miyako deployed her Taser again.  Plaintiff then went to the ground where he tucked his hands underneath his chest and refused to let us complete the handcuffing.  After refusing our commands to stop resisting Miyako again deployed her Taser for a third cycle and we were able to complete the handcuffing.  Plaintiff had given us a false name.  A Constable from the Constable's Office arrived and used a mobile AFIS to fingerprint him and determine his real identity as Roy Ussery.

I did not nor did any other officer kick, strike, or stomp Plaintiff.  No other officer deployed a Taser.  Miyako's deployment of the Taser was consistent with our training and General Orders and responsive to the level of resistance posed by Plaintiff.  My use of force was also consistent with our training and General Orders and responsive to the level of resistance posed by Plaintiff.

During his custodial search, we found counterfeit currency on Plaintiff's person.  We called paramedics to the scene to remove the Taser barbs from Plaintiff.  Miyako and I transported plaintiff to central jail where the nurse directed us to take him to Ben Taub Hospital.  We drove him to Ben Taub.

At all times relevant to Plaintiff's claims, I was a public official, specifically, a Texas Commission on Law Enforcement certified peace officer employed by the Houston Police Department as a police officer.  At all relevant times, I was discharging my official duties, exercising my discretionary authority as a peace officer and acting within the course and scope of my employment as a Houston police officer.  Those duties include investigating possible criminal offenses, enforcing the laws of the State of Texas and City of Houston.  I believe on this occasion Miyako and I used reasonable force under the circumstances.

At all relevant times, I believed that my actions were lawful and justified by the facts known to me and the applicable law relating to the Fourth Amendment.

A reasonable police officer, possessing the information known to me at the time, could have believed that it was lawful to investigate the suspicious vehicle call and detain and arrest Plaintiff as officer Miyako and I did. Therefore, my conduct as described above was objectively reasonable.

11

> At all times during this incident, I was acting in good faith and within the scope of my discretionary authority as a police officer. My actions leading up to, during, and following the arrest in question were undertaken pursuant to the exercise of the authority vested in me as a police officer of the City of Houston. State and federal law permit detentions and arrest based upon probable cause, and I believe that my decisions and actions were consistent with state and federal law. I believe that all my actions on the date and time in question were reasonable, proper, and necessary to perform my duties, and I at no time acted with an intent to deprive Plaintiff of any of his legally protected rights. I did not violate clearly established law of which a reasonable person would have known. I never used excessive force upon Plaintiff and never saw any other officer mistreat or use excessive force in his contact with Plaintiff.

(Docket Entry No. 33-2.)

Miyako also submitted an affidavit in support of summary judgment, in which she

testifies as follows:

> On July 22, 2015 at 2:49 a.m., while on patrol with Officer Xavier Flores, we observed a suspicious vehicle illegally parked in the parking lot of Motel 6, located at 14833 Katy Freeway, Houston, Texas. That area is known for having high drug activity and prostitution. Officer Flores and I were wearing Houston Police uniforms.

> We located the suspicious vehicle which had a female occupant, later determined to be Cassie Ledbetter Hall. She stated that she was waiting in the vehicle for her friend. I observed a male, later identified as Roy Eugene Ussery, coming down the stairs of the motel. He stated the vehicle was not his but he would move it. I asked for his identification. He said it was in his motel room and gave the name Paul Leslie San Salvador. Deputy Everett Simpson, who works an approved extra job there approached and assisted in the investigation. Deputy Simpson checked with the front desk and was advised that Plaintiff was not registered as a guest and was trespassing.

> Officer Flores and Deputy Simpson attempted to handcuff Plaintiff. Flores placed a metal cuff on Plaintiff's left arm, but Plaintiff refused their commands to comply and resisted by swinging his right arm in a striking manner and shouting and kicking. I drew my Taser and warned Plaintiff to stop resisting.

Plaintiff refused, and I deployed the Taser for a five second cycle and aimed at his torso. The Taser did not make good contact, and the Taser had no effect. Plaintiff continued to resist, and I deployed my Taser again for a five second cycle. Plaintiff then went to the ground where he tucked his hands underneath his chest and refused to let us complete the handcuffing. As Plaintiff refused our commands to stop resisting, I deployed my Taser for a third five second cycle and we were able to complete the handcuffing.

I did not nor did any other officer kick, strike, or stomp on Plaintiff's person. We called paramedics to the scene to remove the Taser barbs from Plaintiff. Flores and I transported Plaintiff to central jail where the nurse directed us to take him to Ben Taub Hospital. We drove him to Ben Taub.

Filed separately under seal is a true and correct copy [of] incident reports which pertain to this incident.

At all times relevant to Plaintiff's claims, I was a public official, specifically, a Texas Commission on Law Enforcement certified peace officer employed by the Houston Police Department as a police officer. At all relevant times, I was discharging my official duties, exercising my discretionary authority as a peace officer and acting within the course and scope of my employment as a Houston police officer. Those duties include investigating possible criminal offenses, enforcing the laws of the State of Texas and City of Houston. I believe on this occasion Flores and I used reasonable force under the circumstances.

At all relevant times, I believed that my actions were lawful and justified by the facts known to me and the applicable law relating to the Fourth Amendment.

A reasonable police officer, possessing the information known to me at the time, could have believed that it was lawful to investigate the suspicious vehicle call and detain and arrest Plaintiff as officer Flores and I did. Therefore, my conduct as described above was objectively reasonable.

At all times during this incident, I was acting in good faith and within the scope of my discretionary authority as a police officer. My actions leading up to, during, and following the arrest in question were undertaken pursuant to the exercise of the authority vested in me as a police officer of the City of Houston. State and federal law permit detentions and arrest based upon probable cause, and I believe that my decisions and actions were consistent

with state and federal law.  I believe that all my actions on the date and time in question were reasonable, proper, and necessary to perform my duties, and I at no time acted with an intent to deprive Plaintiff of any of his legally protected rights. I did not violate clearly established law of which a reasonable person would have known.  I never used excessive force upon Plaintiff and never saw any other officer mistreat or use excessive force in his contact with Plaintiff.

(Docket Entry No. 33-1, record citation omitted.)

Miyako testifies in her affidavit that she was the only officer who deployed a Taser at plaintiff during the incident, and plaintiff presents no probative summary judgment evidence to the contrary.  Flores attempted to place handcuffs on plaintiff while he was struggling and resisting the officers, but was unable to fully secure plaintiff until he was subdued by the tazings.

Because this case concerns the defense of qualified immunity, "the Court considers only the facts that were knowable to the defendant officers." *White v. Pauly*, ___U.S.___, 137 S. Ct. 548, 550 (2017) (per curiam); *Kingsley v. Hendrickson*, ___U.S.___, 135 S. Ct. 2466, 2474 (2015) (emphasizing that "a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer").  "Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant." *Hernandez v. Mesa*, ___U.S.___, 137 S. Ct. 2003, 2007 (2017) (per curiam).  An officer's actions are to be evaluated in light of the circumstances that confronted him, without the benefit of hindsight. *Graham*, 490 U.S. at 396–97.

Defendants contend that their use of force did not violate plaintiff's constitutionally guaranteed rights because it was not clearly excessive to the need or objectively unreasonable under the circumstances. Defendants argue that they are protected under the doctrine of qualified immunity. In the instant case, Miyako testifies that Flores and Simpson attempted to restrain plaintiff. She states that Flores was able to place one handcuff on plaintiff, but that plaintiff ignored their commands to stop resisting. Miyako determined it was necessary to use her Taser to bring plaintiff under control. She aimed for plaintiff's torso, but due to his continued struggling and resisting, the Taser barbs struck plaintiff's face and head. A subsequent Taser barb was located on his side. Plaintiff claims that another barb was fired into his back after he was subdued on the ground, but no probative summary judgment supports this allegation. Only after deployments of the Taser did plaintiff cease struggling and allow defendants to secure and restrain him.

Under the totality of these circumstances, defendants' use of force was not objectively unreasonable or clearly excessive, and they are entitled to qualified immunity. Defendants' motion for summary judgment is **GRANTED** and plaintiff's Fourth Amendment claims against them are **DISMISSED WITH PREJUDICE**.

To the extent plaintiff claims that defendants violated his constitutional rights by falsifying the incident reports or failing to file a separate report, his claim raises no viable issue of a constitutional dimension for purposes of section 1983. Defendants' motion for

summary judgment dismissal of this claim is **GRANTED** and the claim is **DISMISSED WITH PREJUDICE**.

To the extent plaintiff seeks monetary compensation for an allegedly unlawful arrest and criminal charges stemming from the incident, he fails to show that the arrest and/or ensuing criminal charges have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. His claims are barred by *Heck*, and are **DISMISSED WITH PREJUDICE** to being asserted again until the *Heck* conditions are satisfied.

## V.   STATE LAW CLAIMS

It is unclear whether plaintiff intended to raise state law claims against one or more of the defendants. To any extent plaintiff raises state tort law claims against the defendants, the claims are not cognizable for purposes of section 1983. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental or pendant jurisdiction over a state law claim when it has dismissed all claims over which it has original jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Enochs v. Lampasas County*, 641 F.3d 155, 161 (5th Cir. 2011) (explaining that the rule in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed").

Because the Court is dismissing all of plaintiff's federal claims, it declines to exercise supplemental or pendant jurisdiction over any state law claims raised by plaintiff.

## VI.   CONCLUSION

The defendants' motions for summary judgment (Docket Entries No. 26, 33, 35) are **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**.  Any and all pending motions are **DENIED AS MOOT**.

Plaintiff's claims for monetary damages for an allegedly unlawful arrest and/or criminal charges are **DISMISSED WITH PREJUDICE** to being asserted again until the *Heck* conditions are satisfied.

Signed at Houston, Texas, on this the ___17___ day of September, 2019.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

17